528 A.2d 520

**FRIENDSHIP HEIGHTS VILLAGE COUNCIL, et al.**

v.

**DIRECTOR OF FINANCE FOR MONTGOMERY COUNTY, MARYLAND.**

**No. 1625, Sept. Term, 1986.**

Court of Special Appeals of Maryland.

July 16, 1987.

Certiorari Denied Dec. 28, 1987.

262

Edward L. Genn (Gilbert J. Genn, on the brief), Rockville, for appellant/appellee, Friendship Heights.

John B. Walsh, Jr. (John F. McCabe, Jr., on the brief), Rockville, for appellant/appellee, Edwards Family Ltd. Partnership.

Paul A. McGuckian, Co. Atty., and H. Christopher Malone, Sr. Asst. Co. Atty. for appellee, Director of Finance for Montgomery County, Md.

Argued before WILNER, BLOOM and ROSALYN B. BELL, JJ.

BLOOM, Judge.

This tax case reaches us in a somewhat unusual posture. The judgment appealed from is a decision of the Circuit Court for Montgomery County, which affirmed in part and reversed in part an order of the Maryland Tax Court. Friendship Heights Village Council and the villages of Friendship Heights and The Hills, which did not pay, levy or collect any taxes and therefore, according to the Tax Court, were not even parties to the proceeding before it, appeal because the circuit court ordered them to refund taxes levied and collected by Montgomery County. The Edwards Family Limited Partnership and numerous other taxpayers, who initiated these proceedings with demands for refunds of taxes levied and collected by the county, are also appealing from the same judgment even though it affirmed the Tax Court ruling that they are entitled to the refunds they seek.

We shall affirm the circuit court's affirmance of the Tax Court's ruling that the taxpayer-appellants are entitled to refunds, but we shall reverse the judgment insofar as it imposed the duty to repay the money on the Village Council and the villages instead of the county.

### *Background*

The villages of Friendship Heights and The Hills comprise one of the special taxing districts created by the General Assembly in 1914 by a public local law that now appears as §§ 66–1 through 66–12 of the Montgomery County Code. An elected body, appellant Friendship Heights Village Council, governs the taxing district and has the responsibility for providing, within the district, certain services normally provided directly by the county, such as road maintenance, police and fire protection, and trash removal. Montgomery County, Md. Code §§ 66–7, 66–9. The money needed to meet those obligations is derived largely from special taxing district property taxes levied and collected by the Montgomery County Council and remitted to the Treasurer of the Village Council along with a share of the county's road taxes, pursuant to § 66–2 of the county code.

Under § 66–2, the county council was directed to levy and collect annually a tax on all real and personal property located within Friendship Heights and The Hills at the rate of 10 cents per $100 of assessed value. That basic taxing authority was supplemented by § 66–3, which empowered the county council to make an additional levy not to exceed 30 cents per $100 assessed value on property situated within the villages.[1] The exercise of that additional authority was conditioned by § 66–3, however, on three events:

---

1. By Ch. 924, § 1, Laws of 1978, the General Assembly repealed and reenacted §§ 66–2 and 66–3, combining them into one section which, in effect, directs the Montgomery County Council to levy and collect a tax of not less than ten cents nor more than fifty cents per $100 assessed valuation of property within this special taxing district. There were no substantial changes in the provisions for payment of

1. The county council had to receive by April 15 a petition requesting the additional levy, signed by either a majority of the Friendship Heights Village Council or a significant number of resident taxpayers of the villages;

2. The county council then had to publish in one or more newspapers within the county for two consecutive weeks a notice that indicated the council's intention to assess the levy, the purpose and amount thereof, the effect that the levy would have on tax rates within the villages and the date that the county council would meet to hear objections to the levy; and

3. On the date designated in the notice, the county council had to meet and hear the advocates and opponents of the proposed additional levy.

During the tax years 1974–75, 1975–76 and 1976–77, the county levied additional tax on property in this special taxing district, in the amounts of 30 cents for 1974–75, 30 cents for 1975–76, and 29 cents for 1976–77. Beginning in 1977, appellees Edwards Family Limited Partnership, *et al.*, filed claims for refund of those taxes with the Director of Finance for Montgomery County in accordance with article 81, § 214(a) of the Maryland Annotated Code.[2] Those

---

the taxes so collected, as well as a portion of county road taxes, to the Village Council. References to sections of the county code in this opinion are to the code as it existed during the period of time the taxes that are the subject of this action were levied and collected, *i.e.*, pre–1978.

2. Art. 81, § 214(a) provides:

(a) *Generally.*—Whenever any person shall claim to have erroneously or mistakenly paid to the county commissioners of any county, or to the collector for such county, or to the collector or other official of any municipality, or to the Mayor and City Council of Baltimore, or the collector for Baltimore City, more money for ordinary county or city taxes than was properly and legally chargeable to or collectible from such person, he may file with the collector in any county or municipality or the appeal tax court in Baltimore City, a written application for the refund thereof, and if approved by such collector, or the said appeal tax court the said county commissioners or the said municipal officials or the Mayor

claims were denied by the Director on the basis that the tax receipts had been paid over to the Friendship Heights Village Council. In the Director's opinion, the taxpayers' claims should have been submitted to the Village Council, not the county.

The taxpayers thereafter filed their individual appeals of the Director's decision to the Maryland Tax Court, which consolidated the several appeals into a single action. While the matter was pending, the Director of Finance filed a petition to require that Friendship Heights Village Council and the villages of Friendship Heights and The Hills (hereinafter collectively called "Friendship Heights") be made parties respondent to the appeal. When the Tax Court rejected that request, the Director of Finance filed a third party claim against Friendship Heights. The Tax Court initially accepted the third-party claim, over the vigorous objections of Friendship Heights to being made a party. Nevertheless, by its order and memorandum dated 3 July 1985, the Tax Court ultimately dismissed the third-party petition for lack of authority to entertain it and directed the county to issue refunds to Edwards Family Limited Partnership and the other taxpayers. The Tax Court found that none of the prerequisites to the imposition of a special levy under § 66–3 had been met. Consequently, it decided that the tax had been collected illegally by the county.

The Director of Finance appealed the order of the Tax Court to the Circuit Court for Montgomery County, and Friendship Heights Village Council and the special taxing district filed a "precautionary" cross-appeal, to preserve, if necessary, the positions they had taken before the Tax Court prior to being dismissed as parties: (1) no refunds

---

and City Council of Baltimore shall levy and pay to such persons any money that was so paid. . . .

Md.Ann. Code art. 81, § 214(a) (1980 Repl.Vol.). Article 81, § 214(a) was repealed by ch. 8, §§ 1, 15 Laws of 1985. For current provisions that are similar to § 214(a) see Md.Tax-Prop.Code Ann., §§ 14–905, 14–911, 14–914, 14–915 (1986).

were due the taxpayers and (2) no relief could be granted against the cross-appellants.

During the proceedings in the circuit court, Montgomery County (in the person of its Director of Finance, the nominal appellee in the Tax Court and appellant in the circuit court) virtually conceded that the additional tax levies had been imposed illegally. Friendship Heights, however, argued vociferously that the language of § 66–3 was directory and, therefore, that substantial compliance with the section would suffice to make the tax assessments legal. The circuit court affirmed the Tax Court's determination that the tax levies were improper, but held that the Tax Court had misconstrued the limits of its own jurisdiction. In the view of the circuit court, the Tax Court was embued by article 81, § 229 of the Maryland Code (1980 Repl. Vol. & Supp.1986) with sufficient equitable jurisdiction to afford complete relief to the parties before it, and that it should have permitted the Director's third-party action. That purported error was "corrected" by the circuit court; it modified the Tax Court's order and directed Friendship Heights, instead of Montgomery County, to refund the illegally collected special levies. It is from that judgment dated 20 May 1986 that these appeals were taken.

Appellant Friendship Heights submits a myriad of issues. They can be summarized in two questions:

1. Whether the Maryland Tax Court has jurisdiction to resolve a third-party claim lodged against entities not otherwise properly before the court; and

2. Did the Maryland Tax Court err in its finding that the additional special property tax levies for tax years 1974–75, 1975–76 and 1976–77 were collected illegally?

The Director of Finance for Montgomery County, appellee, takes no position with respect to the right of the taxpayers to receive the refunds; he is content to defend the court's decision that those refunds must be collected

from the special taxing district that actually received the money.

The taxpayers, in their capacity as appellees, defend the court's determination that they are entitled to refunds; as appellants, they challenge the court's decision that they must look to the special taxing district for their money.

Because of the positions taken by the parties to this appeal, we need answer only the questions propounded by Friendship Heights, and our answers to both of those questions are in the negative.

## I

It was the determination of the circuit court that under article 81, § 229, the Maryland Tax Court has the authority to render complete relief to the parties before it, and that the Tax Court had the "jurisdiction" to entertain the third-party action against Friendship Heights. Section 229 reads, in pertinent parts:

§ 229. Procedure on appeals to and from Court.

(b) *Rules of procedure.*—The Court may, subject to the provisions of this article, adopt reasonable rules of procedure relating to pleadings, notices, hearings and arguments. After June 30, 1980, the Court may not adopt any new rules of procedure, except in compliance with the requirements of the Administrative Procedure Act.

(c) *Conduct of proceedings.*—Proceedings before the Court shall be de novo and shall be conducted in a manner similar to proceedings in courts of equity in this State.

.    .    .    .    .

(f) *Power to hear, try and determine, or remand cause; amendment of pleadings; rules of evidence.* —The Court shall have full power to hear, try and determine or remand any matter before it and may permit or require all explanations, amendments and additions to be made to any of the proceedings or pleadings, including the petition of appeal, as in its discretion shall be necessary or desirable so that the case may be properly heard

and determined. The Court shall not be bound by the technical rules of evidence.

We believe that the lower court misconstrued the scope of § 229 in concluding that it conferred jurisdiction over Friendship Heights as third parties.

It is apparent from the text of § 229 that that section does not purport to confer general equitable jurisdiction on the court. It is concerned with the procedures to be followed on appeals to and from the Tax Court. The limited scope of § 229 was recognized by the Court of Appeals in *County Executive of Montgomery County v. Supervisor of Assessments*, 275 Md. 392, 340 A.2d 246 (1975), where it was held that the Tax Court could not enact a rule under § 229(b) that would impair its own jurisdiction. The case of *Montgomery County, Md. v. Supervisor of Assessments*, 275 Md. 58, 337 A.2d 679 (1975), is not to the contrary.

In that case, the Tax Court permitted the county to intervene in a pending action involving the valuation of certain property located within its borders. The Court of Appeals approved the practice, holding that under § 229 the Tax Court plainly possesses the authority to permit intervention when the requisite interest is established. Obviously, in an appeal involving an assessment, the real parties in interest are the taxpayer and the taxing authority, not the assessor. Although Montgomery County, the proper, interested party in that case, was held to have a right to intervene and thus submit itself to the jurisdiction of the Tax Court with respect to the matter pending before it, the Court of Appeals did not indicate that the Tax Court could assert its authority over an unwilling defendant with respect to matters not within that court's statutory jurisdiction.

The basic jurisdiction of the Tax Court is described in Md. Code Ann., art. 41, § 10–502(1) (1986 Repl.Vol.) (formerly § 318), which states:

(1) *Maryland Tax Court.*—On and after July 1, 1959, the Maryland Tax Court shall have jurisdiction to hear

appeals from the decision, determination, or order of any final assessing or taxing authority of the State, or of any agency, department, or political subdivision thereof, with respect to the valuation, assessment, or classification of property, or the levy of a tax, or with respect to the application for an abatement or reduction of any assessment, or tax, or exemption therefrom.

■ Article 81, § 229 does partially define the power of the Tax Court to hear and dispose of matters properly before it. When, as in this case, its jurisdiction is invoked on appeal to it from a decision of a taxing authority with respect to the propriety of a tax levy and/or an application for abatement of a tax, the Tax Court has full power to hear, try and determine *that* matter, § 229(f); and in disposing of *that* cause, it "is empowered to ... abate, modify, change or alter any ... tax or final order appealed from" or, of course, affirm the order appealed from in the absence of affirmative evidence to the contrary or error apparent on the face of the proceeding.

The appeals to the Tax Court in this case were from decisions of the collector for the taxing authority, denying refunds of taxes allegedly illegally levied and collected. The Tax Court, therefore, was empowered to hear that appeal and abate those taxes; it had no authority to adjudicate a claim by the taxing authority for indemnification by the special taxing district to which it unlawfully paid over the taxes it had illegally levied and collected.

■ The authority of the Tax Court to conduct its proceedings "in a manner similar to proceedings in a court of equity," § 229(c), does not enlarge the special, limited, statutory jurisdiction of that court into the broad general jurisdiction of a court of equity to bring before it all parties having any interest in the ultimate outcome of the proceedings and adjudicate all conflicting claims among those parties. Nor, in this case, could the circuit court exercise such broad authority. On an appeal to it from the Tax Court, the jurisdiction of the circuit court is limited to determining the

matter on the record made in the Tax Court, upon which it must affirm the Tax Court order if it is supported by substantial evidence appearing in the record and is not erroneous as a matter of law; otherwise, it may affirm, revise, remand or modify the order. § 229(*o* ). There being no error of law in the Tax Court's order denying its jurisdiction to adjudicate a collateral, third-party claim for indemnity upon an appeal to it from a denial of refund by the taxing authority, the circuit court erred in reversing the Tax Court on that issue.

Furthermore, the circuit court's ruling was inconsistent with the relief—either indemnity or contribution—available under third-party practice. The typical third-party claim by a defendant in an action is an assertion that if the defendant is liable to the plaintiff the third-party shall be liable to the defendant for all (indemnity) or part (contribution) of such damages as are awarded the plaintiff against the defendant. *See*, for example, Md. Rule 2–332(a) (third-party practice in the circuit courts). The circuit court did not, by its order in this case, hold Friendship Heights liable to the county for all or part of the county's liability to the taxpayers; it simply substituted Friendship Heights for the county and made the former directly liable for the obligations of the latter. In effect, what the circuit court did was accept the first position taken by the county and rejected by the Tax Court, *i.e.*, that since the money eventually went to the special taxing district, the taxpayers had to look to that entity, not the county, for refunds.

■ That position was not only wrong because of the limited jurisdiction of the Tax Court; it was wrong in substance and theory. When the collector of taxes for the county collects state real property taxes along with county taxes, as he is obliged by law to do, Md. Tax-Prop. Code Ann. § 4–201(a)(1) (1986), or when he collects municipal real estate taxes upon the request of the municipality, pursuant to Md. Tax-Prop. Code Ann. § 4–201(b), he acts as agent for the state or municipality; he is the collector of taxes for those entities and not for the county with respect to such

taxes. Claims for refunds, credits, or abatements of state or municipal taxes, therefore, are made to the state or municipality, not the county. But the villages of Friendship Heights and The Hills are not a municipality;[3] they have no power to levy taxes. There is a minimum levy of ten cents per $100 that the county council has been required by law since 1914 to impose (which is not an issue in this case), but any levy of any additional taxes for this special taxing district is a matter entirely within the authority and discretion of the Montgomery County Council. With respect to those taxes, for which the refunds were sought in this case, the Director of Finance was acting only as collector for the county. If, as was held by the Tax Court and the circuit court, those taxes were illegally levied and collected, the illegal acts were committed by the county. The fact that the county paid over the money it collected to the special taxing district, at the district's request, may enable the county to recover the money from the special taxing district in an action on an implied contract under general equitable principles of restitution, but it does not justify the substitution of the special tax district for the county as the party liable to the taxpayers.

## II

Friendship Heights's contention that the taxpayers are not entitled to refunds was given short shrift in the Tax Court and the circuit court. It will get no longer shrift here. As noted above, the county council's authority to levy a special district tax on property in the villages of Friendship Heights and The Hills in excess of ten cents per

---

3. Section 66-2 of the county code provides that the villages of Friendship Heights and The Hills are to be treated as an incorporated town, and deemed to be so by the county council, but only with respect to its receipt and disbursement of its proportionate share of the county road tax. Special taxing districts, in general, are "governmental entities," for purpose of providing their officials with governmental immunity from civil liability. Md.Ann. Code art. 26, §§ 1-5.

$100 of assessed valuation was expressly conditioned by § 66–2 of the county code upon

(1) timely receipt of a petition signed by a majority of the Village Council or a significant number of resident taxpayers;

(2) publication of notice of a meeting of the county council to hear objections to the proposal; and

(3) the council meeting, on the date designated in the notice, to hear proponents and opponents of the proposed additional levy.

■ It was undisputed that there was no written petition to the county council, no publication of notice of a meeting by the county council to decide upon the proposed levy, and no public hearing by the council for any of the three fiscal years in question. The argument of Friendship Heights that an oral "request" or letter from an official of the Village Council to the county council constituted a petition within the meaning of the statute is simply absurd. The statute explicitly requires a petition signed by a majority of the Village Council or some substantial number of taxpayers. An oral request obviously does not satisfy that requirement, nor does a letter signed by one officer of the Village Council. Friendship Heights's argument that the many public meetings and discussions that took place within the district were adequate notice to all concerned to constitute "substantial compliance" with the statute is equally preposterous. The ultimate decision to levy the additional tax was the decision of the county council; an opportunity to express one's views within the district is not equivalent to an opportunity to be heard by the decision makers.

JUDGMENT AFFIRMED IN PART AND REVERSED IN PART, AND CASE REMANDED FOR PASSAGE OF AN ORDER AFFIRMING THE MARYLAND TAX COURT.

COSTS TO BE PAID ONE–HALF BY MONTGOMERY COUNTY AND ONE–HALF BY THE FRIENDSHIP HEIGHTS VILLAGE COUNCIL.